**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 14-20643-CIV-ALTONAGA/O'Sullivan**

**MICCOSUKEE TRIBE OF INDIANS**
**OF FLORIDA**,

       Plaintiff,

v.

**UNITED STATES DEPARTMENT**
**OF JUSTICE**, *et al.*,

       Defendants.

_____/

**<u>ORDER</u>**

      **THIS CAUSE** came before the Court on the parties' motions for summary judgment. On February 19, 2015, Plaintiff, Miccosukee Tribe of Indians of Florida (the "Tribe"), filed a Motion for Summary Judgment . . . ("Tribe Motion") [ECF No. 41]; and Defendant, the United States Department of Justice (the "DOJ"), filed a Motion for Summary Judgment ("DOJ Motion") [ECF No. 39].[1] On March 9, 2015, the Tribe filed a Response . . . ("Tribe Response") [ECF No. 48], in opposition to the DOJ Motion.   On March 23, 2015, the DOJ filed a Response . . . ("DOJ Response") [ECF No. 52], which serves as a response in opposition to the Tribe Motion and a reply to the Tribe Response.   On April 2, 2015, the Tribe filed a Reply . . . ("Tribe Reply") [ECF No. 53], to the DOJ Response.   The Court has carefully reviewed the parties' written submissions, the record, and applicable law.

---

[1] The DOJ represents itself as well as the other defendants, which are components of the DOJ.  (*See* DOJ Mot. 1).

# I. BACKGROUND

## A.  The Requests

In July 2012, the Tribe made separate requests for records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to the following components of the DOJ: the Office of the Inspector General ("OIG"), Executive Office for United States Attorneys ("EOUSA"), Office of Information Policy ("OIP"), Office of Professional Responsibility ("OPR"), and Office of Tribal Justice ("OTJ") (collectively, the "DOJ Components").  (*See* DOJ's Statement of Material Facts ("DOJ SMF") [ECF No. 40] ¶ 1; Tribe's Statement of Undisputed Material Facts . . . ("Tribe SMF") [ECF No. 42] ¶¶ 1–6).  The Tribe sought records relating to its former attorney, Guy Lewis ("Lewis"), who it suspects committed misconduct during his 2002–2004 tenure as Director of the EOUSA (a position he held prior to entering private practice and representing the Tribe as a client).  (*See* DOJ SMF ¶¶ 2–3; Tribe SMF ¶ 29; First Amended Complaint . . . ("First Amended Complaint" or "FAC") [ECF No. 27] ¶¶ 27–28, 30–31).

The Tribe hoped to find information about Lewis it could use in a lawsuit it filed against him and his law partner for, among other things, fraud and legal malpractice.  (*See* DOJ SMF ¶ 4).  The Tribe also hoped to use the information in a separate suit against the Tribe's former chairman, Billy Cypress, who the Tribe suspects was aided by Lewis in embezzling more than $11 million of the Tribe's funds.  (*See id.*).  According to the Tribe, its FOIA requests also sought to find out "how the DOJ responded to misconduct of high-level employees, whether the DOJ gave preferential treatment to a long time [sic] employee, and whether Lewis is misrepresenting his tenure . . . at the [DOJ] and the [EOUSA] after publicly disclosing that no misconduct occurred."  (Tribe's Response . . . to Defendants' Statement of Material Facts [ECF No. 49] ¶ 4 (alterations added)).

CASE NO. 14-20643-CIV-ALTONAGA/O'Sullivan

Specifically, "[t]he Tribe's FOIA requests to OIG, EOUSA, OIP, and OPR sought information concerning any [DOJ] investigation, or any other internal inquiry, of . . . Lewis for alleged wrongdoing in his capacity as Director of the [EOUSA] and any disciplinary action taken against Mr. Lewis." (DOJ SMF ¶ 2 (alterations added; internal quotation marks and citation omitted); *see also* Tribe SMF ¶ 8). With respect to OTJ, the Tribe requested "records that detail the alleged professional misconduct that led to Mr. Lewis's termination in 2004, but also sought information regarding OTJ's collaboration with Mr. Lewis and EOUSA, and records related to any complaints against the office of EOUSA from Indian Country, individual Native-Americans or the Native American Indian Tribes." (DOJ SMF ¶ 3 (internal quotation marks omitted); *see also* Tribe SMF ¶ 9).

In response to the Tribe's requests regarding any investigation, internal inquiry, or disciplinary action relating to Lewis, the DOJ Components refused to confirm or deny the existence of responsive records pursuant to FOIA's Exemption 7(C), 5 U.S.C. § 552(b)(7)(C). (*See* DOJ SMF ¶ 6). Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C) (alteration added). The OPR also invoked Exemption 6, 5 U.S.C. § 552(b)(6). (*See* DOJ SMF ¶ 7). Under Exemption 6, an agency may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Finally, in response to the broader requests submitted to the OTJ ("information regarding OTJ's collaboration with Mr. Lewis and EOUSA, and records related to any complaints against the office of EOUSA from

3

Indian Country, individual Native-Americans or the Native American Indian Tribes" (DOJ SMF ¶ 3)), the OTJ indicated it did not locate any responsive records.  (*See id.* ¶ 7).

### B.  Procedural History

The Tribe submitted its FOIA requests to the DOJ Components in July 2012.  (*See* [ECF Nos. 27-2, 27-3, 27-4, 27-5, 27-6]).  The OPR rendered a decision first, denying the Tribe's request in a letter dated November 2, 2012.  (*See* [ECF No. 27-8]).  On December 28, 2012, per the OPR's FOIA procedure, the Tribe appealed that decision to the OIP (*see* [ECF No. 27-9]), and the OIP affirmed the OPR's decision on May 20, 2013 (*see* [ECF No. 42-3]).  In the meantime, the OIG denied the Tribe's initial FOIA request on March 8, 2013 (*see* [ECF No. 39-1] at 4–5), and the OIP did the same on April 5, 2013 (*see* [ECF No. 42-2]).  The Tribe commenced this suit a little less than a year later, on February 20, 2014.  (*See* Complaint . . . ("Original Complaint") [ECF No. 1]).

Thus, at the time the Tribe filed the Original Complaint, the Tribe had received initial decisions from the OPR, OIG, and OIP.  Additionally, the Tribe had appealed and received an appellate decision on the OPR's initial decision, but the Tribe had not appealed the initial decisions of the OIG and OIP.[2]  As for the EOUSA and OTJ, they responded to the Tribe's initial requests months after this suit was filed: the EOUSA on August 5, 2014 (*see* [ECF No. 39-1] at 10–11), and the OTJ on August 29, 2014 (*see* [ECF No. 42-1]).[3]

The First Amended Complaint alleges the DOJ Components wrongfully withheld the requested records, and asks the Court to order the DOJ Components to disclose the requested records.  (*See generally* FAC).  The Tribe also seeks various declaratory judgments as to alleged

---

[2] The responses from the OIG and OIP advised the Tribe it could appeal the decisions to the OIP within 60 days.  (*See* [ECF No. 39-1] at 4; [ECF No. 42-2]).

[3] The OTJ claims it never received the Tribe's initial request and found out about it only when the request was filed as a document [ECF No. 27-6] in this litigation.  (*See* [ECF No. 42-1]).

procedural violations of the FOIA, an *in camera* review of the requested records, and attorney's fees and costs incurred in this action.  (*See id.* 12).  In its motion for summary judgment, the Tribe seeks the same relief, arguing (1) the DOJ Components failed to timely respond to the FOIA requests; (2) the *Glomar* responses are improper because the non-existence of the requested records has been publicly disclosed; and (3) Exemptions 6 and 7(C) are unavailing given the overriding public interest in the records sought.  (*See* Tribe Mot. 7).

The DOJ asks the Court to affirm the DOJ Components' *Glomar* responses.  (*See generally* DOJ Mot.).  In support of its motion, the DOJ submits the Declaration of Deborah M. Waller ("Waller Declaration") [ECF No. 39-2], explaining the basis for the DOJ Components' *Glomar* responses.  The DOJ also submits the Affidavit of Jeanne Jacobs [ECF No. 39-4], explaining the OTJ's search for records pursuant to the broader request the Tribe submitted to the OTJ.

The parties agree judgment is proper as a matter of law because there are no genuine issues of material fact.  (*See* Tribe Mot. 1; DOJ Mot. 3).

## II.  LEGAL STANDARDS

### A.  Summary Judgment

Summary judgment shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(a), (c).  In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997), and "must resolve all reasonable doubts about the facts in favor of the non-movant," *United of Omaha Life*

*Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1558 (11th Cir. 1990). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Burgos v. Chertoff*, 274 F. App'x 839, 841 (11th Cir. 2008) (quoting *Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (internal quotation marks omitted)). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Channa Imps., Inc. v. Hybur, Ltd.*, No. 07-21516-CIV, 2008 WL 2914977, at *2 (S.D. Fla. July 25, 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The movant's initial burden on a motion for summary judgment "consists of a responsibility to inform the court of the basis for its motion and to identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (alterations and internal quotation marks omitted)). "[T]he plain language of Rule 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (quoting *Celotex*, 477 U.S. at 322 (alterations and internal quotation marks omitted)). As the briefs indicate (*see* Tribe Mot. 1; DOJ Mot. 3), there are no genuine issues of material fact, and therefore judgment is proper as a matter of law.

**B. FOIA**

The FOIA "provides for wide-ranging citizen access to government documents and presumes them subject to disclosure." *Ely v. Fed. Bureau of Investigation*, 781 F.2d 1487, 1489

CASE NO. 14-20643-CIV-ALTONAGA/O'Sullivan

(11th Cir. 1986) (citations omitted).   Several statutory exemptions, however, permit federal agencies to withhold records from the public.  *See* 5 U.S.C. §§ 552(b)(1)–(9).  If a dispute arises as to the applicability of an exemption, the "FOIA places on the courts the obligation to consider and resolve competing claims of privilege and access."  *Ely*, 781 F.2d at 1490.  Accordingly, a requester contending an agency wrongly withheld records may petition the court "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).  The Court reviews *de novo* an agency decision to withhold its records, and the Government bears the burden of justifying any disputed exemption.  *See id.*; *see also Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1258 (11th Cir. 2008).

"Generally, FOIA cases should be handled on motions for summary judgment." *Miscavige v. Internal Revenue Serv.*, 2 F.3d 366, 369 (11th Cir. 1993).  In assessing the evidence, the Court must determine whether the agency had an "adequate factual basis" for invoking the exemption.  *Miccosukee Tribe of Indians of Fla.*, 516 F.3d at 1258.  "[I]n this Circuit, an adequate factual basis may be established, depending on the circumstances of the case, through affidavits, a *Vaughn* Index, *in camera* review, *or* through a combination of these methods."  *Id.* (alteration added; emphasis in original; citation omitted).[4]  Affidavits alone may be sufficient "so long as they provide an adequate factual basis for the district court to render a decision."  *Id.* (citation omitted).

While typically an agency identifies, however generally, the documents for which it asserts an exemption, courts recognize an exception to this rule, known as the *Glomar* response,

---

[4] A *Vaughn* index lists the documents the agency is withholding along with a detailed justification for the agency's claim.  *See Stephenson v. Internal Revenue Serv.*, 629 F.2d 1140, 1145 (5th Cir. 1980) (citing *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974), *on appeal from remand*, 523 F.2d 1136 (D.C. Cir. 1975)).

by which an agency "neither confirms nor denies the existence of the documents sought in the FOIA request." *Office of the Capital Collateral Counsel, North. Region of Fla., ex rel. Mordenti v. Dep't of Justice*, 331 F.3d 799, 801 n.3 (11th Cir. 2003) (citing *Phillippi v. Central Intelligence Agency*, 546 F.2d 1009 (D.C. Cir. 1976)).  "A *Glomar* response, however, is permitted only when confirming or denying the existence of records would itself cause harm cognizable under an FOIA exception." *Citizens for Responsibility & Ethics in Washington ("CREW") v. U.S. Dep't of Justice*, 746 F.3d 1082, 1091 (D.C. Cir. 2014) (internal quotation marks and citations omitted).  To prevail, the Government must "justify the *Glomar* response based on general exemption review standards established in non-*Glomar* cases." *Elec. Privacy Info. Ctr. v. Nat'l Sec. Agency*, 678 F.3d 926, 931 (D.C. Cir. 2012) (internal quotation marks and citation omitted).

Because even a *Vaughn* index or *in camera* review could undermine the purpose of a *Glomar* response by suggesting the existence (or not) of requested records, the D.C. Circuit has explicitly endorsed reliance on agency affidavits at summary judgment: "[i]n *Glomar* cases, courts may grant summary judgment on the basis of agency affidavits that contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Id.* (alteration added; internal quotation marks and citation omitted).  The Eleventh Circuit has also suggested reliance on affidavits alone may be proper in the *Glomar* context. *See Ely*, 781 F.2d at 1493–94.

## III. ANALYSIS

In its motion for summary judgment, the Tribe first argues the EOUSA and OIG have not timely responded to the Tribe's FOIA requests.  (*See* Tribe Mot. 7).  Next, the Tribe argues the

DOJ Components' *Glomar* responses were improper because Lewis made public disclosures revealing the non-existence of the documents the Tribe requested in its FOIA submissions.  (*See id.* 7–10).  Finally, the Tribe argues the DOJ cannot prevail on the merits of its exemption arguments.  (*See id.* 10–17).

In contrast, the DOJ argues its *Glomar* responses are justified under Exemptions 6 and 7(C) because the private interest in not revealing the existence of the requested records outweighs the Tribe's asserted public interests.  (*See generally* DOJ Mot.).  In support of its arguments, the DOJ offers the Waller Declaration, which avers there has been no public disclosure of any wrongdoing by Lewis or any investigation of Lewis (*see* Waller Decl. ¶ 23); acknowledgment of the existence of records responsive to the Tribe's requests "could reasonably be expected to constitute an unwarranted invasion of privacy" (*id.* ¶ 25); and, even "if any such records exist, they would be maintained in an investigative records system that contains records compiled for law enforcement purposes," including for use in investigations that "could result in civil, criminal, or administrative penalties" (*id.* ¶ 24).[5]

### A.  Mootness and Exhaustion of Administrative Remedies

The Court first addresses the Tribe's argument the EOUSA and OIG have not timely responded to the Tribe's FOIA requests.  (*See* Tribe Mot. 7).  The DOJ contends this argument is moot, given the EOUSA and OIG have responded.  (*See* DOJ Resp. 1–2).  In the Tribe's Reply, the Tribe admits the EOUSA and OIG have issued responses, but the Tribe, for the first time in the briefing, raises the issue of the Tribe's exhaustion of its administrative remedies, asking the

---

[5] The Court notes the Tribe's request for *in camera* inspection of any withheld documents, to the extent they exist (*see* Tribe Mot. 17–18), but because the Tribe fails to provide adequate legal support for its request, the Court declines to grant the request.  In any event, the Court's decision to review documents *in camera* is discretionary under the FOIA, *see Stephenson*, 629 F.2d at 1145, and as stated, reliance on an agency affidavit supporting a *Glomar* response is proper at summary judgment, *see Elec. Privacy Info. Ctr.*, 678 F.3d at 931; *Ely*, 781 F.2d at 1493–94.

Court to find it still has jurisdiction over this matter because the OPR's initial decision, as well as the decision on appeal of the OPR's initial decision, "encompasses all responses by each DOJ Component Agency." (Tribe Reply 2). This argument, however, fails for the simple fact neither of those decisions indicated they had any bearing on the Tribe's FOIA requests directed to the other DOJ Components. (*See* [ECF Nos. 27-8, 42-3]).

The Tribe further asks, in the event the Court determines it does not have jurisdiction over any of the Tribe's claims directed to the DOJ Components, that the Court "stay the case, or dismiss the case without prejudice, and require the applicable agency to permit the Tribe to take an administrative appeal." (Tribe Reply 2).[6] The "FOIA clearly requires a party to exhaust all administrative remedies before seeking redress in the federal courts." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994) (citations omitted). These administrative remedies include any appeals the agency permits. *See id.* at 1369 (citing *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990)); *see also CREW v. Fed. Election Comm'n*, 711 F.3d 180, 182 (D.C. Cir. 2013).

The Tribe, however, misunderstands the nature of this requirement: exhaustion of administrative remedies under the FOIA is not a jurisdictional requirement; rather, it is a jurisprudential doctrine, "perform[ing] a function similar to the judicial doctrine of ripeness by postponing judicial review." *Taylor*, 30 F.3d at 1367 n.3 (alteration in original; citation omitted); *see also Hidalgo v. Fed. Bureau of Investigation*, 344 F.3d 1256, 1258–59 (D.C. Cir. 2003). Thus, while exhaustion of administrative remedies under the FOIA does not bear on a court's subject-matter jurisdiction, the "exhaustion requirement [nevertheless] is a condition precedent to filing suit." *Taylor*, 30 F.3d at 1367–68 (alteration added); *see also Bonilla v. U.S. Dep't of*

---

[6] Although the Court has discretion to permit the filing of a sur-reply "when a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief," *First Specialty Ins. Corp. v. 633 Partners, Ltd.*, 300 F. App'x 777, 788 (11th Cir. 2008) (internal quotation marks and citation omitted), the DOJ did not seek leave to file a sur-reply to respond to this newly raised argument.

*Justice*, 535 F. App'x 891, 892 (11th Cir. 2013).  A FOIA claim as to which a party has failed to exhaust its administrative remedies is therefore premature — a court cannot grant relief on the claim.  *See Taylor*, 30 F.3d at 1367 n.3.

The "FOIA provides for two different types of exhaustion, actual and constructive. Actual exhaustion occurs when the agency denies all or part of a party's document request. Constructive exhaustion occurs when certain statutory requirements are not met by the agency." *Id.* at 1368.  The only claim in this case the Tribe has actually exhausted is its claim regarding the OPR, as the Tribe appealed the OPR's determination and received a decision on appeal.

Additionally, the Tribe has constructively exhausted its claims regarding the OTJ and EOUSA.  When a requester does not receive a determination within 20 days, or 30 days under "unusual circumstances," 5 U.S.C. §§ 552(a)(6)(A)(i), (a)(6)(B)(i), the requester is deemed to have exhausted its administrative remedies and may therefore file suit against the agencies that have not responded.  *See Taylor*, 30 F.3d at 1368; *CREW*, 711 F.3d at 182.  The Tribe's request to the OTJ is dated July 18, 2012 (*see* [ECF No. 27-6]), and its request to the EOUSA is dated July 16, 2012 (*see* [ECF No. 27-3]).  This suit was filed on February 20, 2014, but the OTJ and EOUSA did not respond to the Tribe's requests until months later.  (*See* [ECF No. 39-1] at 10– 11; [ECF No. 42-1]).  The Tribe is therefore deemed to have constructively exhausted its administrative remedies with respect to its claims against the OTJ and EOUSA.

As for the OIG and OIP, although the Tribe alleges in the First Amended Complaint it has not received a response from either (*see* FAC ¶¶ 42, 49), the evidence — which the Tribe does not dispute — shows the OIG responded on March 8, 2013 (*see* [ECF No. 39-1] at 4–5), and the OIP responded on April 5, 2013 (*see* [ECF No. 42-2]).  The Tribe still has not appealed these determinations despite the determinations' advising of the Tribe's right to appeal.  (*See*

[ECF No. 39-1] at 4; [ECF No. 42-2]).   Consequently, the Tribe has failed to exhaust its administrative remedies as to the OIG and OIP, and therefore the Tribe's claims with respect to the OIG and OIP must be dismissed as premature.

### B.  The *Glomar* Responses

The Court turns now to the Tribe's claims with respect to the OPR, OTJ, and EOUSA. The Tribe argues the DOJ Components' *Glomar* responses are improper because, in a deposition in another case, Lewis's responses to certain questions indicate the records the Tribe is seeking do not exist.  (*See* Tribe Mot. 7–10).   The Tribe also argues, assuming no public disclosure occurred, the DOJ nevertheless cannot satisfy its burden of establishing the propriety of Exemptions 6 and 7(C).  (*See id.* 10–17).

Because *Glomar* responses are evaluated under the FOIA exemption standards applicable in non-*Glomar* cases, *see Elec. Privacy Info. Ctr.*, 678 F.3d at 931, the Court addresses the OPR, OTJ, and EOUSA's *Glomar* responses under the standards for Exemptions 6 and 7(C), modified as necessary for the *Glomar* context.   The DOJ must satisfy a two-part test to establish the propriety of the exemptions.  First, it must establish its claim of right to withhold "comes within the ambit of one of the statutory exemptions."   *Ely*, 781 F.2d at 1490 n.3.   Only after that showing is made is the relevant exemption's *ad hoc* balancing analysis proper.  *Id.*[7]

### 1.  Public Disclosure

Before conducting the analyses under Exemptions 6 and 7(C), the Court addresses the Tribe's assertion the non-existence of the records it is seeking has already been publicly

---

[7] As an alternative to a case-specific, *ad hoc* balancing analysis, "categorical decisions may be appropriate and individual circumstances disregarded when a case fits into a genus in which the balance characteristics tips in one direction."  *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 776–79 (1989); *see also Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 893 (D.C. Cir. 1995).  Because there is no binding precedent on this issue specific to the facts of this case, and given the parties did not brief whether a new categorical standard should be recognized here, the Court declines to address the issue and instead will conduct an *ad hoc* balancing analysis.

disclosed. "Under FOIA's 'public domain' exception, an agency may not rely on an otherwise valid [FOIA] exemption to justify withholding information that is already in the public domain." *Marino v. Drug Enforcement Admin.*, 685 F.3d 1076, 1080 (D.C. Cir. 2012) (internal quotation marks and citations omitted; alteration in original). "Yet in the context of a *Glomar* response, the public domain exception is triggered when the prior disclosure establishes the *existence* (or not) of records responsive to the FOIA request, regardless whether the contents of the records have been disclosed." *Id.* at 1081 (internal quotation marks and citation omitted; emphasis in original). Thus, if the existence (or not) of records has already been publicly disclosed, an agency may not issue a *Glomar* response as to those records. The contents of the records, however, may still be subject to an exemption. Further, while the Government bears the burden of justifying any exemptions, "a plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Davis v. Dep't of Justice*, 968 F.2d 1276, 1279 (D.C. Cir. 1992) (quoting *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983)).

On October 9, 2012, Lewis gave the following answers to questions during a deposition in an unrelated case:

> Q. Okay. Have you ever been fired or terminated from a place of employment?
>
> A. No.
>
> Q. The position that you held in Washington, D.C. as Director of the Executive Office for United States Attorneys, was that a position that — that you held which was terminated as a result of any type of wrongdoing or malfeasance on your behalf, Mr. Lewis?
>
> A. No.
>
> Q. And without going into an extensive amount of details, was that a position that you walked away from or that you stepped away from?

A.  Yes.

Q.  And did your decision to walk away or take yourself out of that position in Washington, D.C. — was that as a result of any type of wrongdoing or malfeasance on your behalf?

A.  No.

Q.  Or as a result of any type of ongoing investigation against you stemming from wrongdoing or malfeasance?

A.  No.  I left and went into private practice.  Many of the people with whom I had been working were leaving, including the Attorney General and the Deputy Attorney General.  And the Department was becoming, in my view, more and more political.

(October 9, 2012 Deposition of Guy A. Lewis in *Bermudez et al. v. Bert et al.*, No. 00-25711-CA-21 (Fla. 11th Cir. Ct.) [ECF No. 41-1] at 7:25–8:25).  According to the Tribe, "Lewis makes clear that he was not terminated from EOUSA due to an investigation, or wrongdoing or malfeasance on his behalf.  Lewis has therefore asserted that no documents exist."  (Tribe Reply 6).  The Tribe thus reasons the DOJ Components' *Glomar* responses — refusing to confirm or deny the existence of the records — were improper.  (*See id.*).

In the deposition testimony, all Lewis revealed was he was never fired or terminated from employment, and he left his position at the EOUSA voluntarily.  His testimony says next to nothing about any wrongdoing or malfeasance on his part, or any investigation, internal inquiry, or discipline against him: the most one could know from Lewis's testimony is that such alleged events — assuming they happened and corroborating documents exist — were not his reason for leaving the EOUSA.  The fallacy in the Tribe's argument is that if one of those events occurred, Lewis either would have been terminated or would have left his job because of the occurrence.  But that is not necessarily true.  For example, an internal inquiry or disciplinary action can be a means to correct an employee's behavior in order to avoid firing him.  Lewis's testimony thus

says nothing about the existence, or non-existence, of records relating to any alleged wrongdoing or malfeasance on his part, or any investigation, internal inquiry, or discipline against him. Based on the evidence submitted, the Court finds the existence, or non-existence, of the records the Tribe is seeking has not been publicly disclosed.

### 2. Exemption 7(C)

The Court next addresses the propriety of the OPR, OTJ, and EOUSA's basing their respective *Glomar* responses on Exemption 7(C), which covers "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C) (alteration added). The Tribe states it does not seek information compiled for law enforcement purposes, but the Tribe offers no discernible argument explaining why the requested records do not fit in this category. (*See* Tribe Mot. 10–11). The Waller Declaration submitted by the DOJ explains the records the Tribe seeks, "if any such records exist, . . . would be maintained in an investigative records system that contains records compiled for law enforcement purposes," including for use in investigations that "could result in civil, criminal, or administrative penalties" (Waller Decl. ¶ 24 (alteration added)). Given the statements in the Waller Declaration, as well as the Tribe's allegations Lewis misused public funds and committed theft (however unsubstantiated those allegations may be) (*see* FAC ¶¶ 27, 30–31), the Court finds the records the Tribe seeks, if they exist, would have been compiled for law enforcement purposes. *See Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 89 (D.C. Cir. 1984) ("[A]n agency's investigation of its own employees is for law enforcement purposes only if it focuses directly on specifically alleged illegal acts, illegal acts of particular

identified officials, acts which could, if proved, result in civil or criminal sanctions." (alteration added; internal quotation marks and citation omitted)).

Because the requested records fall within the ambit of Exemption 7(C), the Court balances the private and public interests implicated by the Tribe's requests. *See Ely*, 781 F.2d at 1490 n.3; *Nadler v. U.S. Dep't of Justice*, 955 F.2d 1479, 1487 (11th Cir. 1992), *abrogated on other grounds by U.S. Dep't of Justice v. Landano*, 508 U.S. 165 (1993). "[T]he mention of a person's name in the context of a law enforcement investigation will engender comment and speculation and carries a stigmatizing connotation." *Nadler*, 955 F.2d at 1489 (alteration added; citation omitted). Consequently, Exemption 7(C) recognizes a private citizen has a substantial privacy interest in law enforcement records containing personal information. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 166 (2004) ("In this class of cases where the subject of the documents is a private citizen, the privacy interest . . . is at its apex." (alteration in original; internal quotation marks and citation omitted)). A government official's privacy interest in personal information contained in law enforcement records may be somewhat lessened when compared to the privacy interest of a private citizen, but it is nevertheless considerably substantial. *Compare Ray v. U.S. Dep't of Justice, I.N.S.*, 778 F. Supp. 1212, 1215 (S.D. Fla. 1991) ("[The officer]'s status as a federal employee does not diminish his privacy interest." (alteration added; citation omitted)), *with Kimberlin v. Dep't of Justice*, 139 F.3d 944, 949 (D.C. Cir. 1998) (finding "the rank of the public official involved" should be considered in determining the privacy interests at stake under Exemption 7(C)).

Regardless of an individual's status as a private citizen or government official, "[b]ecause of the potential for stigmatization, [E]xemption 7(C) takes particular note of the strong interest of individuals . . . in not being associated unwarrantedly with alleged criminal activity." *Nadler*,

955 F.2d at 1489 (alterations added; internal quotation marks and citation omitted).  As a result, when an agency invokes Exemption 7(C), "a Glomar response may be issued in place of a statement acknowledging the existence of responsive records but withholding them, if confirming or denying the existence of the records would associate the individual named in the request with criminal activity."  *Nation Magazine*, 71 F.3d at 893.

The Tribe argues Lewis forfeited his privacy interest in the existence (or not) of the Tribe's requested records when Lewis testified as to the non-existence of the requested records. Public disclosure of information bearing on a privacy interest may very well undermine that interest, which in turn could eviscerate the propriety of a *Glomar* response.  *See CREW*, 746 F.3d at 1092 (finding a prominent public official's "obvious privacy interest in keeping secret the fact that he was the subject of an FBI investigation was diminished by his well-publicized announcement of that very fact").  Yet, as explained in Part III.B.1, *supra*, Lewis's testimony does not indicate one way or another whether the requested records exist.

This case is thus a considerable departure from *Kimberlin*, in which an assistant United States attorney ("AUSA"), whose misconduct and subsequent investigation and sanctioning by the OPR were public knowledge, nevertheless retained a significant privacy interest warranting withholding under Exemption 7(C).  *See* 139 F.3d at 949.  Here, the Tribe has presented no evidence Lewis engaged in any misconduct or was investigated or disciplined, let alone any evidence showing public disclosure of such matters.  Thus, if the AUSA in *Kimberlin* retained some of his privacy interest, then Lewis's privacy interest remains wholly intact.  Further, given there is no evidence of any misconduct by Lewis, it is irrelevant Lewis, as former director of the EOUSA, held a higher-ranked position than the AUSA in *Kimberlin* (*see* Tribe SMF ¶¶ 31–33).

It also makes no difference Lewis testified at his deposition about why he voluntarily left his position at the EOUSA, as this testimony does not address whether any misconduct, investigation, or disciplinary proceeding took place in connection with the end of his employment.  The mere fact of testifying as to certain matters does not waive an individual's privacy rights as to "all other related information."  *Scales v. EOUSA*, 594 F. Supp. 2d 87, 91 (D.D.C. 2009).  For example, in *Burge v. Eastburn*, the requester was subject to a state criminal investigation, during the course of which various individuals testified.  *See* 934 F.2d 577, 578 (5th Cir. 1991).  Given the public knowledge the FBI was conducting a parallel investigation into possible civil rights violations, the requester suspected certain witnesses in his state criminal proceeding gave statements to the FBI.  *See id.*  The requester's FOIA request covered these suspected FBI statements, but the FBI issued a *Glomar* response.  *See id.* at 578 n.1.

The Fifth Circuit upheld the FBI's response — despite the fact the FBI investigation was public knowledge and the relevant individuals testified in the state criminal proceedings — because testifying as to one matter did not waive the individuals' privacy rights as to all related matters.  *See id.* at 579.  Further, the statements to the FBI suspected by the requester would not be "necessarily identical to [the information] contained in the [individuals'] testimony."  *Id.* (alterations added).  Lewis's testimony about why he voluntarily left the EOUSA does not open the door to all matters potentially related to his employment at the EOUSA, especially matters that could associate him with criminal activity.  Lewis therefore has a substantial privacy interest under Exemption 7(C).

Next, the Court must "balance the . . . privacy interest against the public interest in disclosure."  *Favish*, 541 U.S. at 171 (alteration added).  Although generally a requester need not identify any reason why it seeks documents subject to disclosure under the FOIA, when "the

CASE NO. 14-20643-CIV-ALTONAGA/O'Sullivan

privacy concerns addressed by Exemption 7(C) are present, the exemption requires the person requesting the information to establish a sufficient reason for the disclosure." *Id.* at 172.  This "public interest" leg of the balancing analysis proceeds in two steps.  "First, the citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake.  Second, the citizen must show the information is likely to advance that interest.  Otherwise, the invasion of privacy is unwarranted." *Id.*

"Official information that sheds light on an agency's performance of its statutory duties falls squarely within [FOIA's] statutory purpose," and therefore access to such information is a cognizable public interest under Exemption 7(C).  *Reporters Comm.*, 489 U.S. at 773 (citations and internal quotation marks omitted).  Further, although the "FOIA extends only to those records which reveal something about *agency action*, the mere fact that records pertain to an individual's activities does not necessarily qualify them for exemption.  Such records may still be cloaked with the public interest if the information would shed light on agency action." *Nation Magazine*, 71 F.3d at 894–95 (emphasis in original).  For example, in *CREW*, the court found a public interest in examining the FBI's investigation of a "prominent and influential public official[]."  746 F.3d at 1094.  The court further emphasized this public interest existed independent of any assertion of impropriety on the part of the FBI — there was simply a public interest in knowing how the FBI conducted the investigation, especially considering the investigation targeted a high-ranking public official accused of serious misconduct.  *See id.* at 1094–95.

But the key fact distinguishing the request in *CREW* from the Tribe's request is that the request in *CREW* was premised on an actual and publicly acknowledged investigation.  In contrast, the Tribe's request is premised on unsubstantiated speculation of wrongdoing, which is

19

CASE NO. 14-20643-CIV-ALTONAGA/O'Sullivan

not a cognizable public interest under the FOIA. To allow the Tribe to override Lewis's significant privacy interest for the sake of finding out whether an imagined investigation actually took place is to read Exemption 7(C) as tolerating fishing expeditions, which would leave the FOIA's privacy concerns meaning little to nothing. *See Wilson v. U.S. Dep't of Justice*, 42 F. Supp. 3d 207, 215 (D.D.C. 2014) ("To be sure, an agency is not obligated to confirm leaks or to otherwise divulge information where a plaintiff is plainly on a fishing expedition." (citation omitted)).

Given the Tribe's requests focus on Lewis alone, this case is unlike *Department of Air Force v. Rose*, in which the Supreme Court allowed a public interest in assessing an agency's conduct to overcome Exemption 6. *See* 425 U.S. 352, 380–82 (1976). In *Rose*, records of agency disciplinary proceedings were properly disclosed as long as the names of the individuals in the proceedings were redacted. *See id.* This public interest would not be applicable, however, "[i]f, instead of seeking information about the [agency]'s own conduct, the requests had asked for specific files to obtain information about the persons to whom those files related." *Reporters Comm.*, 489 U.S. at 774 (alterations added) (explaining *Rose*).[8]

Similarly, bringing to light government misconduct (as compared to simply monitoring government activity) is also a cognizable public interest under Exemption 7(C), but again, the requester must proffer a reason for the request based on more than unsubstantiated allegations of misconduct:

> where there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure. Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.

---

[8] Although the Supreme Court's holding in *Rose* pertained to Exemption 6, the Supreme Court later applied that holding in the Exemption 7(C) context. *See Reporters Comm.*, 489 U.S. at 768.

*Favish*, 541 U.S. at 174.  The requester must make this showing because government records and official conduct generally are presumed legitimate.  *See U.S. Dep't of State v. Ray*, 502 U.S. 164, 179 (1991).  If, for example, "a totally unsupported suggestion that the interest in finding out whether Government agents have been telling the truth justified disclosure of private materials, Government agencies would have no defense against requests for production of private information."  *Id.*   The Tribe is thus incorrect in arguing unsubstantiated allegations of misconduct can give rise to a public interest under the FOIA.  (*See* Tribe Mot. 13–14).

The Court now turns to the reasons the Tribe asserts for its requests.  (*See id.* 15–17).  To the extent the Tribe purports to vindicate a public interest in bringing to light wrongdoing by Lewis or the DOJ Components, the Tribe has not proffered any "evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish*, 541 U.S. at 174; *see also Nadler*, 955 F.2d at 1490 (finding no cognizable interest in assessing the thoroughness of a government investigation where there is no showing the agency "failed to perform adequately its investigative function"); *Bonilla v. U.S. Dep't of Justice*, No. 11-20450-CIV, 2012 WL 3759024, at *3 (S.D. Fla. Aug. 29, 2012) (finding plaintiff failed to "provide any facts or information to suggest some form of governmental misconduct would come to light if he had access to the requested materials" (citing *Favish*, 541 U.S. at 174)), *aff'd*, 535 F. App'x 891 (11th Cir. 2013); *Ray*, 778 F. Supp. at 1215 (finding "no evidence" in support of purported "public interest in uncovering wrongdoing by government employees and monitoring the conduct of public officials"); *Bilderbeek v. U.S. Dep't of Justice*, No. 6:08-CV-1931-ORL-28GJK, 2010 WL 1049618, at *6 & n.9 (M.D. Fla. Mar. 22, 2010) ("Other than vague assertions of an improper investigation, the Plaintiffs have articulated no genuine public interest in the release of the records at issue.").

CASE NO. 14-20643-CIV-ALTONAGA/O'Sullivan

The other public interests argued by the Tribe are likewise not cognizable under Exemption 7(C). The Tribe's desire to ascertain the veracity of Lewis's deposition testimony carries no weight because a requester's interest in ascertaining the veracity of testimony is not a cognizable public interest where there is no indication the testimony is untruthful. *See Burge*, 934 F.2d at 579–80. Also, the Tribe's hope to obtain information for use in its lawsuits involving Lewis is a purely personal motive having no meaningful connection to the public interest. *See Nadler*, 955 F.2d at 1489 ("Only the interest of the general public, and not that of the private litigant, is relevant to our inquiry." (citation omitted)); *see also Brown v. Fed. Bureau of Investigation*, 658 F.2d 71, 75 (2d Cir. 1981); *Tanks v. Huff*, No. CIV-A-95-568-GK, 1996 WL 293531, at *4 (D.D.C. May 28, 1996). Finally, the Tribe's interest in exposing Lewis's alleged wrongdoing to his clients in his private practice has no connection to government activity and thus is not a cognizable public interest. *See Reporters Comm.*, 489 U.S. at 773. The Tribe has therefore failed to "show that the public interest sought to be advanced is a significant one." *Favish*, 541 U.S. at 172.

In sum, a conclusory assertion a public interest may be vindicated is not enough to establish a cognizable public interest — specific facts must support the assertion. *See Scales*, 594 F. Supp. 2d at 91 (finding a "bald assertion . . . is insufficient to overcome the individual's privacy interests in the records at issue" (alteration added; citation omitted)). Given the Tribe's failure to establish a cognizable public interest and Lewis's significant privacy interest in the information requested, the OPR, OTJ, and EOUSA's *Glomar* responses were proper under Exemption 7(C), as disclosure of responsive records could reasonably be expected to constitute an unwarranted invasion of Lewis's personal privacy.

### 3. Exemption 6

In addition to Exemption 7(C), the OPR invoked Exemption 6, which covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). An agency may withhold personal information in agency records pursuant to Exemption 6 if "(1) the information was within personnel, medical, or similar files; and (2) a balancing of individual privacy interests against the public interest in disclosure reveals that disclosure of the information would constitute a clearly unwarranted invasion of personal privacy." *News-Press v. U.S. Dep't of Homeland Sec.*, 489 F.3d 1173, 1196–97 (11th Cir. 2007) (internal quotation marks and citation omitted). Under the first prong, "similar files" is interpreted broadly to include "any 'detailed Government records on an individual which can be identified as applying to that individual.'" *Id.* at 1197 (quoting *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982)). "[A]n agency's investigative reports constitute 'similar files' for purposes of Exemption 6." *Corbett v. Transp. Sec. Admin.*, 568 F. App'x 690, 703 (11th Cir. 2014) (alteration added; citations omitted); *see also Stern*, 737 F.2d at 89. The Tribe does not dispute its request to the OPR seeks "personnel . . . and similar files."

Yet, "the crux of Exemption 6 is its second prong." *News-Press*, 489 F.3d at 1197 (citations omitted). Compared to the language of Exemption 7(C) ("could reasonably be expected to constitute an unwarranted invasion"), the "would" and "clearly unwarranted" language of Exemption 6 imposes not just a higher, but an "onerous" burden on the Government. *See id.* at 1197–98. Similar to the Exemption 7(C) context, the public interest in knowing whether an agency has adequately executed its statutory duties "falls squarely within" the

CASE NO. 14-20643-CIV-ALTONAGA/O'Sullivan

purpose of Exemption 6. *U.S. Dep't of State v. Ray*, 502 U.S. 164, 177–78 (1991) (citation omitted).

In *Mordenti*, the Eleventh Circuit held the DOJ could withhold under Exemption 6 certain records relating to internal disciplinary proceedings against a former AUSA. *See* 331 F.3d at 803–04. Lewis, like the former AUSA in *Mordenti*, is now a private citizen but was, at times relevant to the records the Tribe seeks, a public official in the DOJ. This hybrid private-citizen-former-public-official status, however, does not deprive Lewis of his significant privacy interest under Exemption 6. *See Corbett*, 568 F. App'x at 704 (explaining *Mordenti*, 331 F.3d at 803). The Eleventh Circuit in *Mordenti* further concluded the former AUSA retained her privacy interest despite the additional fact there was "already substantial information available to the public about [her] misconduct and her subsequent sanctions." 331 F.3d at 804 (alteration added). In the instant case, there is no public information regarding any internal investigation of Lewis or any disciplinary proceeding against him. If the DOJ's invocation of Exemption 6 prevailed in *Mordenti*, then it certainly must prevail here.

The Tribe counters Lewis was an official ranked at a higher level than the former AUSA in *Mordenti*, and while that is true, Lewis does not lose his significant privacy interest in the face of baseless allegations of misconduct. To rule otherwise would render Exemption 6's privacy concerns meaningless, as anyone could merely allege wrongdoing and thereby obtain personal information about an individual, even without that individual's consent. *See John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) ("Despite these pronouncements of [FOIA's] liberal congressional purpose, this Court has recognized that the statutory exemptions are intended to have meaningful reach and application." (alteration added)).

By contrast, in *Cochran v. United States*, the Eleventh Circuit found Exemption 6 "overwhelming[ly] favors the disclosure of information relating to a violation of the public trust by a government official, which certainly includes the situation of a misuse of public funds or facilities by a Major General of the United States Army." 770 F.2d 949, 956 (11th Cir. 1985) (alteration added). In that case, a violation of the public trust actually happened. The Tribe has failed to offer evidence even suggesting any such thing happened with respect to Lewis. Indeed, just like in the Exemption 7(C) context, "[m]ere speculation about hypothetical public benefits cannot outweigh a demonstrably significant invasion of privacy." *Ray*, 502 U.S. at 179 (alteration added).

Additionally, Exemption 6 does not recognize a public interest in ascertaining the veracity of government reports where "[t]here is not a scintilla of evidence, either in the documents themselves or elsewhere in the record, that tends to impugn the integrity of the reports." *Id.* "We generally accord Government records and official conduct a presumption of legitimacy," *id.*, and the Tribe has offered no evidence rebutting this presumption. Finally, there is no public interest in the Tribe's obtaining records for its private litigation, *see Horowitz v. Peace Corps*, 428 F.3d 271, 278–79 (D.C. Cir. 2005); nor is there a public interest in the Tribe's using government records to deter individuals from retaining Lewis as an attorney, *see Reporters Comm.*, 489 U.S. at 773. The balance of private and public interests under Exemption 6 weighs in favor of the OPR's *Glomar* response, as disclosure of responsive records would constitute a clearly unwarranted invasion of Lewis's personal privacy.[9]

---

[9] The Court is aware the Tribe has requested attorney's fees and costs but also notes the Tribe's failure to provide adequate legal support for that argument. (*See* Tribe Mot. 17–18). Regardless, the FOIA permits attorney's fees and costs only if the complainant "has substantially prevailed," *see* 5 U.S.C. § (a)(4)(E)(i), and the Tribe has not substantially prevailed, *see id.* § (a)(4)(E)(ii).

CASE NO. 14-20643-CIV-ALTONAGA/O'Sullivan

## IV.  CONCLUSION

Although the FOIA favors the disclosure of government records for the good of the public, the DOJ has met its burden to show the OPR, OTJ, and EOUSA's refusals to confirm or deny the existence of the records the Tribe is seeking are justified under Exemptions 6 and 7(C). Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

1. The DOJ Motion **[ECF No. 39]** is **GRANTED in part**, and the Tribe Motion **[ECF No. 41]** is **DENIED**.  The determinations of the OPR (as affirmed on appeal by OIP), OTJ, and EOUSA are **AFFIRMED**.  The Tribe's claims with respect to the determinations of OIG and OIP are **DISMISSED without prejudice**.

2. The Tribe's request for a hearing is **DENIED**.

3. The Tribe's request for *in camera* review of documents is **DENIED**.

4. The Tribe's request for attorney's fees and costs is **DENIED**.

5. The Clerk of Court is directed to mark this case as **CLOSED**.

**DONE AND ORDERED** in Miami, Florida, this 14th day of April, 2015.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record